c

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | |
|---|---|
| RELENTLESS LAND COMPANY, LLC AND BAYOU DES SOTS, LLC, **Plaintiffs** | CIVIL ACTION NO. 1:21-CV-03515 |
| **VERSUS** | **JUDGE DRELL** |
| **THE AVOYELLES PARISH POLICE JURY,** **Defendant** | **MAGISTRATE JUDGE PEREZ-MONTES** |

---

## <u>REPORT AND RECOMMENDATION</u>

Before the Court are the following motions filed by Defendant the Avoyelles Parish Police Jury (the "Police Jury"):  (1) a Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction; (2) a Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim; and, alternatively, (3) a Rule 12(e) Motion for a More Definite Statement.  ECF No. 9.  The Police Jury seeks dismissal for lack of federal question jurisdiction.[1]  Alternatively, the Police Jury requests that Plaintiffs Relentless Land Company, LLC ("RLC") and Bayou Des Sot, LLC ("BDS") (collectively, "Plaintiffs") be required to file a more definite statement.  Plaintiffs oppose.  ECF No. 11.

Because Plaintiffs do not allege a ripe takings claim, the Police Jury's Rule 12(b)(1) (ECF No. 9) should be GRANTED for lack of jurisdiction.

---

[1] There is no other basis alleged for this Court's jurisdiction.  It is undisputed that there is no diversity of citizenship jurisdiction.  And Plaintiffs admit that the federal question hinges on their alternative claim for damages for a "taking" only if the Court were to declare the road is public.  ECF No. 11 at 4.

I.    Background

Plaintiffs filed a Complaint for declaratory judgment concerning the Police Jury's ownership or control of Bayou des Sots Road (the "Road") in Avoyelles Parish, Louisiana.  ECF No. 1 at 2.  Plaintiffs also seek compensation for a taking under 28 U.S.C. § 1983.  *Id.* at 9.  Plaintiffs assert federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367(a).  *Id.* at 2.

Plaintiffs assert causes of action for declaratory judgment, a taking in violation of the United States Constitution and the Louisiana Constitution, detrimental reliance, equitable estoppel or estoppel *in pais*, and negligent misrepresentation.  *Id.* at 6-14.[2]

The Road is a dirt and gravel road, beginning at Big Bend Road in Moreauville, Louisiana and ending at Highline Road near the Red River in Avoyelles Parish, Louisiana.  *Id.* at 3.  Plaintiffs claim the Road is public for only approximately seven-tenths of one mile, beginning at Big Bend Road in Moreauville, Louisiana.  *Id.* at 2.  They allege the Police Jury has taken the position that the Road is public for the entirety of its approximately seven miles.  *Id.*  Plaintiffs assert that if the Police Jury is correct, the designation of the Road as public over Plaintiffs' lands constitutes a taking for which the Police Jury, a governmental entity, has not provided just compensation in violation of the Louisiana and United States Constitutions.  *Id.* at 2-3.

---

[2] Plaintiffs do not allege a Fourteenth Amendment due process violation in their Complaint. ECF No. 1.  The only claim allegedly raised under federal law is a Fifth Amendment takings claim.

Plaintiffs allege the Road was used as a logging road by its previous owner, was in disrepair, and was rendered impassible by rains in the area. *Id.* at 3. On June 29, 2021, RLC purchased a tract of land (the "Relentless Tract"), which includes a substantial portion of the Road. *Id.* On July 9, 2021, BDS purchased a portion of the Relentless Tract (the "BDS Tract"). *Id.* The BDS Tract contains a portion of the Road, which was part of the Relentless Tract. *Id.*

Plaintiffs allege that during their due diligence in purchasing the property, they sought and received a written determination from the Police Jury that only seven-tenths of one mile of the Road were public. *Id.* Attached to the Complaint is written correspondence from the Police Jury concerning their maintenance of the Road. ECF No. 1-1.[3] Plaintiffs assert that this segment of the Road (the "Public Segment") began at Big Bend Road in Moreauville, Louisiana and ended before it reached the Relentless Tract. ECF No. 1 at 3.

In addition to the Police Jury's written assurance, Plaintiffs claim they did their own due diligence including surveys and title opinions, which confirmed that the portion of the Road which traversed the Relentless and BDS Tracts was private in nature and wholly owned by them. *Id.* Plaintiffs further allege that a recent public records request yielded no maintenance records demonstrating the public nature of the road other than the Public Segment. *Id.*

Plaintiffs allege the Police Jury was aware of the end of the Public Segment, which ended before the Relentless Tract, as evidenced by a July 5, 2016 survey. *Id.*

---

[3] May 27, 2021 correspondence from the Police Jury states that they maintain a section of 0.7 miles of the Road, ending at Longitude -91.789145, Latitude 31.089023. ECF No. 1-1 at 1.

at 4.  Relying on these representations, Plaintiffs purchased the Relentless and BDS Tracts.  *Id.*  Plaintiffs were required by lenders to purchase an additional five-acre tract of land (the "Access Tract") for access to the Public Segment.  *Id.*

Plaintiffs made substantial improvements to the Road and drainage system, and they placed a fence with a gate on their property to limit access to their properties.  *Id.* at 5.  The Police Jury then held meetings concerning removal of the gate.  *Id.* at 5-6.  Police Juror Jacob Coco ("Coco") asserted the entirety of the Road was public and sought to remove the Plaintiffs' gate.  *Id.* at 5.  The Police Jury deferred any action until its next scheduled meeting on October 12, 2021.  *Id.* at 6.

Plaintiffs allege Coco contacted RLC on October 5, 2021 to inform them that the Police Jury would seek a declaration stating the Road was public.  *Id.* at 6.  Plaintiffs thus claim a justiciable dispute has risen concerning the nature of the Road.  *Id.*  They claim that even if the Road is public, it was done through the exercise of eminent domain without just compensation.  *Id.*

Plaintiffs seek a declaration that the portion of the Road which traverses their property is private.  *Id.* at 7.  Alternatively, Plaintiffs seek a declaratory judgment that, at the time of their purchase of the property in 2021, the portion of the Road which traverses their property was private.  *Id.* at 7-8.

Plaintiffs allege the Police Jury is a governmental entity subject to the Fifth Amendment's Takings Clause.  *Id.* at 8.  Plaintiffs assert that if the portion of the Road that traverses their property is public, then it was made so by expropriation by the Police Jury.  *Id.*  Plaintiffs further allege that the gate is private property, and

4

any destruction or removal is a taking. *Id.* Plaintiffs seek § 1983 damages for the taking of their property, including the decreased value of the property surrounding the taken property, loss of use, loss of income, attorney's fees, and court costs. *Id.* at 9.

Plaintiffs assert supplemental state law claims, including a takings claim under Section 4 of the Louisiana Constitution. *Id.* at 9-10. Plaintiffs assert a detrimental reliance claim under Louisiana Civil Code Article 1967 for damages due to reliance on assurances made by the Police Jury concerning the public portion of the Road. *Id.* at 10. And they claim the Police Jury is barred by "equitable estoppel" or "estoppel *in pais*" from claiming the Road is public beyond the seven-tenths of one mile from Big Bend Road in Moreauville. *Id.* at 12.

Further, Plaintiffs allege the Police Jury made express representations on which Plaintiffs relied and changed their position to their detriment. *Id.* If a portion of the Road that traverses their property is determined to be public, Plaintiffs also assert a claim for damages due to negligent misrepresentation. *Id.* Plaintiffs allege the Police Jury provided false and misleading information that only seven-tenths of one mile of the Road were public. *Id.* Plaintiffs assert that the representation meant that no portion of the Road which traversed the Plaintiffs' properties was public. *Id.* at 13.

The Police Jury now seeks dismissal under Rules 12(b)(1), 12(b)(6), and 12(e). ECF No. 9. The Police Jury argues that whether the Road is public or private is a question arising under state law, and that this Court lacks federal question or

diversity jurisdiction. *Id.* Alternatively, the Police Jury seeks an order requiring Plaintiffs to provide a more definite statement to establish subject matter jurisdiction with supporting facts. *Id.* at 13. Plaintiffs oppose, arguing they assert a valid federal cause of action under the Takings Clause. ECF No. 11.

## II. Law and Analysis

### A. Rule 12(b)(1) provides for dismissal for lack of subject matter jurisdiction.

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Products Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012). District courts have original jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

"A motion to dismiss for lack of subject-matter jurisdiction should only be granted if it appears certain that the plaintiff cannot prove any set of facts in support of his claims entitling him to relief." *Id.* at 287. "Plaintiffs bear the burden of establishing subject-matter jurisdiction." *Id.*

"A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6)." *Hall v. Louisiana*, 974 F. Supp. 2d 978, 985 (M.D. La. 2013) (citing *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992)). However, under Rule 12(b)(1), a district court may dismiss an action for lack of

subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Willoughby v. U.S. Dept. of Army*, 730 F.3d 476, 479 (5th Cir. 2013).

    **B.**    <u>**The Court lacks subject matter jurisdiction.**</u>

The Police Jury asserts that Plaintiffs' dispute as to whether the Road is public or private is a question arising under Louisiana law. ECF No. 9 at 5. The Police Jury agrees that both the United States Constitution and the Louisiana Constitution of 1974 prohibit the taking of private property for public use without just compensation. *Id.* at 5. However, they contend that, under the facts asserted, the eminent domain provision of the Louisiana Constitution applies rather than the United States Constitution. *Id.*

The Police Jury states that Plaintiffs allege the Police Jury, a political subdivision of the State of Louisiana, asserted its right of eminent domain and took Plaintiffs' property. *Id.* at 6. But they argue Plaintiffs made no allegations that the federal government exercised its power or eminent domain over any portion of the Road. *Id.* Thus, the Police Jury seeks dismissal for lack of federal question jurisdiction. *Id.*

Plaintiffs respond that the United States Supreme Court has long held that the Takings Clause of the Fifth Amendment to the United States Constitution applies to the States and their political subdivisions. ECF No. 11 at 7. Plaintiffs respond that their claim is ripe, and that they are not required to first exhaust state law

remedies. *Id.* (citing *Knick v. Twp. of Scott, Pennsylvania*, 139 S.Ct. 2162, 204 L.Ed. 558 (2019)). Plaintiffs argue that, while they maintain the Road is private, they alternatively allege that, if the Road is public, it is only public because of a taking by the Police Jury in violation of both the Louisiana and United States Constitutions. *Id.* at 8.

### 1. A declaration of the Road's status as public or private is insufficient to establish subject matter jurisdiction.

"In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law." *Matter of: Sherwin Alumina Co., L.L.C.*, 952 F.3d 229, 234, n.16 (5th Cir. 2020), *cert. denied sub nom. Port of Corpus Christi Auth. of Nueces Cnty., Texas v. Sherwin Alumina Co., LLC*, 141 S.Ct. 360; 208 L.Ed.2d 88 (2020) (quoting *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992)). Whether the Road is public or private is a question of Louisiana law. Plaintiffs seek a declaration that the road is private. But Plaintiffs' rights as a property owner are a "creature of state law." *Stratta v. Roe*, 961 F.3d 340, 359 (5th Cir. 2020).

Authorization for expropriations by a government body – and important limitations placed upon those authorizations – are found in both the federal and state constitutions. *St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc., LLC*, 239 So.3d 243, 249 (La. 1/30/18) (citing *South Lafourche Levee Dist. v. Jarreau*, 217 So.3d 298, 305 (La. 3/31/17), *cert. denied*, 138 S.Ct. 381, 199 L.Ed.2d 279 (10/31/17)). The Fifth Amendment of the United States Constitution, made applicable to the states pursuant to the Fourteenth Amendment, provides: "No person shall . . . be deprived of life, liberty or property without due process of law; nor

shall private property be taken for public use, without just compensation." U.S. Const., Amend. V.  Likewise, the Louisiana Constitution provides "[p]roperty shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation . . . ." La. Const. art. I, § 4(B)(1). Therefore, under both Constitutions, any expropriation must be for a "public purpose" *and* must provide "just compensation." *St. Bernard Port, Harbor & Terminal Dist.*, 239 So.3d at 249-50.

Under Article 6, Section 23 of the Louisiana Constitution, "political subdivisions may acquire property for any public purpose, donation, expropriation, exchange, or otherwise." La. Const. art. 6, § 23.[4] Article 1, Section 4 of the Louisiana Constitution authorizes expropriation of private property for a public purpose.  La. Const. art. 1, § 4.  A "public purpose" includes "roads, bridges, waterways, access to public waters and lands, and other public transportation, access, and navigational systems available to the general public." *Id.* at § 4(B)(2)(b)(ii).  A political subdivision such as the Police Jury has the authority to expropriate private property (such as a road) for a public purpose. *See* La. R.S. 19:2.1.  Private property is sometimes taken for public use without a prior judicial proceeding.  Where such a taking – an "inverse condemnation" or appropriation – occurs, the public body must still compensate the owner.  La. R.S. 19:14.

Under Louisiana Civil Code article 457, a road may be either public or private. La. Civ. Code art. 457.  A road that is subject to public use is a public road, whereas

---

[4] A political subdivision is a parish, municipality, and any other unit of local government authorized by law to perform government functions.  La. Const. art. 6, § 44.

a road that is not subject to public use is a private road. *Id.*[5] "The public may own the land on which the road is built or merely have the right to use it." *Id.* Roads and streets may also be dedicated to public use through "tacit" dedication.[6]

Louisiana Revised Statute 48:491 provides that:

> All roads and streets in this state which have been or hereafter are kept up, maintained, or worked for a period of three years by the authority of a parish governing authority within its parish, or by the authority of a municipal governing authority within its municipality, shall be public roads or streets, as the case may be, if there is actual or constructive knowledge of such work by adjoining landowners exercising reasonable concern over their property.

La. R.S. 48:491(B)(1)(a).[7] It also states that:

> Notwithstanding any other provisions of law to the contrary, any road or street used by the public is a public road or street provided it is designated as such by the local governing authority, and it shall be within the discretion of the local governing authority to maintain the road up to a private drive; however, no road or street on private property shall be designated as a public road unless ownership is transferred or the right of way is given to the local governing authority.

La. R.S. 48:491(D).[8]

---

[5] However, the classification of a road as public or private does not determine the ownership of the land on which the road is built. The land on which a public road is built may be either a public or private thing. *See* La. Civ. Code arts. 450, 453.

[6] Roads may also be dedicated through formal dedication, implied dedication, or statutory dedication, none of which are alleged here. *See Himel v. Bourque*, 185 So. 3d 42, 45 (La. App. 1 Cir. 12/11/15) (citations omitted).

[7] Tacit dedication may be established by showing there has been sufficient maintenance and that the landowner had knowledge or acquiesced in the public maintenance. *Himel*, 185 So. 3d at 47 (citation omitted). If landowners accept public maintenance of the road upon which they live without protest, then they cannot protest the characterization of the road as public. *Id.* "Working and maintaining" means something more than an occasional "brushing up." *See Mioton v. Mannina*, 536 So. 2d 793, 795 (La. App. 5 Cir. 12/14/88).

[8] A road may be declared public even if the police jury refuses to recognize it as public. "Even after a police jury has in fact abandoned maintenance of a tacitly-dedicated road and refuses

"Deciding whether a road is public or private is a factual decision.  The question of whether a public body has maintained a road, so as to amount to a tacit dedication thereof as public, is one of degree." *IP Timberlands Operating Co. v. De Soto Parish Police Jury*, 552 So. 2d 605, 607 (La. App. 2 Cir. 11/1/89).  "The statute establishing the public character of a road after maintenance by the governing authority for a period of three years, as interpreted, does not amount to a taking of private property without due process of law or without payment of just and adequate compensation." *Vaughn v. Williams*, 345 So.2d 1195, 1199 (La. Ct. App. 4/25/77) (affirming the trial court in holding La. R.S. 48:491 is constitutional).  A declaration of whether a road is public or private does not arise under, or necessarily depend on resolution of a substantial, disputed question of, federal law.  *See Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983); 28 U.S.C. § 1331.

Whether the Road is public or private itself does not establish whether a taking has occurred or create a federal cause of action.  "Nonetheless, a declaratory judgment action, like any other action, must be ripe in order to be justiciable." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000) (citation omitted).  Declaratory Judgment Act claims, without another basis for jurisdiction, cannot support the district court's jurisdiction. *See Simi Inv. Co. v. Harris Cnty., Tex.*, 236 F.3d 240, 247 (5th Cir. 2000), *cert. den.*, 534 U.S. 1022 (2001) (citing *Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir. 1997) ("[I]t is well settled that [the Declaratory Judgment Act] does

---

to recognize the road as public, the right of owners along the road to use the road as a servitude may be upheld." *Kennedy v. McBride*, 939 So.2d 691, 695 (La.App. 3 Cir. 9/27/06) (quoting *Gatson v. Bailey*, 907 So.2d 859, 863 (La. App. 2 Cir. 6/29/05)).

not confer subject matter jurisdiction on a federal court where none otherwise exists.")). Therefore, Plaintiffs fail to assert a ripe federal claim.

### 2. Absent allegations of a ripe takings claim, the Court lacks subject matter jurisdiction.

"The Takings Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, prohibits the taking of private property for public use without just compensation." *Beach v. City of Galveston, Texas*, 21-40321, 2022 WL 996432, at *2 (5th Cir. 2022) (citing *Urban Devs. LLC v. City of Jackson*, 468 F.3d 281, 292 (5th Cir. 2006)).[9] "The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *See Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985); *overruled on other grounds by Knick*, 139 S.Ct. 2162. A Takings Clause claim arises when the government takes private property for public use without compensation. *Knick*, 139 S.Ct. at 2170.[10] The Court analyzes whether Plaintiffs adequately plead a "taking" sufficient to establish federal question jurisdiction.

---

[9] Takings cases are divided into two categories: physical and regulatory. *Yee v. City of Escondido*, 503 U.S. 519, 522-23 (1992). A physical taking comprises unwanted physical occupation of private property. *Loretto v. Teleprompter Manhatten CATV Corp.*, 458 U.S. 419, 421 (1982). A regulatory taking "occurs 'when a regulatory or administrative action places such burdens on ownership of private property that essential elements of such ownership must be viewed as having been taken.'" *Kemp v. United States*, 65 Fed.Cl. 818, 821 (2005).

[10] The Supreme Court explained that the appropriate remedy for a government taking is compensation. *Knick*, 139 S.Ct. at 2175-77. Equitable relief is unavailable because "[a]s long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking." *Id.* at 2176. The Court held that injunctive relief is foreclosed "as long as compensation remedies are available – as they have been for nearly 150 years . . . ." *Id.* at 2179.

Here, Plaintiffs do not claim that the Police Jury's conduct constituted a regulatory taking. There are no allegations that Plaintiffs' property was the subject of a regulation that "denie[d] all economically beneficial or productive use of the land." *See Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001). Plaintiffs allege that while they maintain the Road is private, they alternatively allege that, if the Road is public, it is only public through expropriation by the Police Jury. ECF Nos. 1, 11 at 8. Plaintiffs do not allege any expropriation proceedings were initiated under state law.

Nevertheless, Louisiana law allows a property owner to initiate an inverse condemnation action for just compensation as if the political subdivision had filed a petition for expropriation under La. R.S. 19:2.1.[11] La. R.S. 19:14. Thus, Plaintiffs appear to be alleging inverse condemnation.[12] Prior to the 2019 *Knick* decision,

---

[11] In Louisiana, expropriation is used in the taking of private property for public use under the right of eminent domain. Prior to filing an expropriation suit, an expropriating authority, including political subdivisions, is required to attempt in good faith to reach an agreement to compensation with the property owner and comply with the requirements of La. R.S. 19:2.2. La. R.S. 19:2. The state or its political subdivisions shall file a petition in the district court of the parish in which the property to be expropriated is situated. La. R.S. 19:2.1. If the state has taken possession of the privately owned property of another, and constructed facilities upon, under, or over such property with the consent or acquiescence of the owner, such owner is deemed to have waived his right to contest the necessity for the taking and to receive just compensation prior to the taking. But the owner is entitled to bring an action for such compensation, for the taking, and such action shall proceed if the state or its political subdivision had filed a petition for expropriation. La. R.S. 19:14.

[12] Plaintiffs' allegations amount to more of a "classical taking" where they allege the government has taken the property but not through any regulation. *See United States v. Security Indus. Bank*, 459 U.S. 70, 77 (1982). Rather, Plaintiffs allege the Police Jury used its power of eminent domain or expropriation. "The government commits a physical taking when it uses its power of eminent domain to formally condemn property[.] The same is true when the government physically takes possession of property without acquiring title to it." *Cedar Point Nursery v. Hassid*, 141 S.Ct. 2063, 2071, 210 L.Ed.2d 369 (2021); *see also Yee v. City of Escondido, Cal.*, 503 U.S. 519, 527 (1992) ("The government effects a physical taking only where it *requires* the landowner to submit to the physical occupation of his land.") (emphasis in original).

13

Plaintiffs would have been barred from bringing that inverse condemnation action in federal court before exhausting the available state law procedures.

Here, just compensation remedies are available as Louisiana recognizes an "inverse condemnation" action under Louisiana law. *Blue Monkey Bar, LLC v. Jefferson Parish*, 2011 WL 1303420, at *8 (E.D. La. Mar. 30, 2011) (citing *State Through Dept. of Transp. & Dev. V. Chambers Inv. Co.*, 595 So.2d 598 (La. 1992)). *Knick* now allows federal takings claims brought by a property owner under § 1983 upon the taking (or inverse condemnation) of his property without just compensation by a local government. *Knick*, 139 L.Ed. at 2179 (recognizing that their holding that uncompensated takings violate the Fifth Amendment will not expose governments to new liability, but simply allows into federal court takings claims that otherwise would have been brought as inverse condemnation suits in state court). Thus, the Police Jury's argument that there is no allegation "that the *federal* government in any way exercised its power of eminent domain" is without merit.[13]  ECF No. 9 at 6 (emphasis

---

[13] The Police Jury makes the argument that whether an action will lie under state eminent domain provisions or the Fifth Amendment to the United States Constitution depends entirely upon whether the public project is state or federal, and which government was acting under its power of eminent domain in carrying out the public project. ECF No. 9 at 5 (citing *Sewell v. Sewerage and Water Board of New Orleans*, 2019 WL 2305673 (La. App. 4 Cir. May 29, 2019)).

In a series of decisions, the Court of Appeal of Louisiana for the Fourth Circuit stated that a recognized species of property right had been affected, and that any takings or damaging was for a public purpose, relative to a Southeast Louisiana Urban Drainage ("SELA") project under Louisiana's inverse condemnation. *See Sewell*, 2019 WL 2305673, at *8; *Sewell v. Sewerage & Water Bd. of New Orleans*, 2021 WL 221998, at *3 (La. App. 4 Cir. 1/20/21); *Sewell v. Sewerage and Water Bd. of New Orleans*, 2021 WL 717990, at *7 (La. App. 4 Cir. 2/24/21). In those cases, the Louisiana Fourth Circuit evaluated who had custodial liability over the project in determining the Sewerage and Water Board's liability as part of a three-pronged test for evaluating plaintiffs' inverse condemnation claims. The court found that the SELA project was a state project, wherein the Sewerage and Water Board was acting

added).   Nevertheless, Plaintiffs must still overcome – and this Court must still ascertain – the "ripeness" of their takings claim by evaluating the "finality" prong of *Williamson County* unaffected by *Knick*. *Knick*, 139 S.Ct. at 2169.

Before addressing the merits of a takings claim, a federal court must determine whether the claim is ripe for judicial review. *See Urban Devs.*, 468 F.3d at 292. Article III, Section 2 of the United States Constitution limits the jurisdiction of federal courts to "cases" and "controversies."   U.S. Const. art. III, § 2.   A case or controversy does not exist unless the person who asks the court for a decision has "standing" to do so, the elements of which are injury, causation, and redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992).   A case becomes ripe when it "would not benefit from any further factual development and when the court would be in no better position to adjudicate the issues in the future than it is now." *DM Arbor Court, Ltd. v. City of Houston*, 988 F.3d 215, 218 (5th Cir. 2021) (citing *Pearson v. Holder*, 624 F.3d 682, 684 (5th Cir. 2010) (cleaned up)).   If a claim is not ripe, it must be dismissed for lack of subject matter jurisdiction. *See Urban Devs.*, 468 F.3d

---

under its power of eminent domain and that the trial court did not err in awarding damages for loss of use and enjoyment of plaintiffs' properties when awarding just compensation. *Sewell*, 2019 WL 2305673, at \*4-9.

None of the *Sewell* cases discussed *Knick* or its relevance.  *Knick* acknowledged the ability of a plaintiff to bring ripe constitutional claims under § 1983 without first bringing any sort of state lawsuit, even when state court actions addressing the underlying behavior are available.  *Knick*, 139 S.Ct. at 2172-73; *see also Stratta v. Roe*, 961 F.3d 340 (5th Cir. 2020) (reversing a portion of a Texas federal district court's dismissal of a takings claim as unripe against a local regulatory authority and its officials because they had not received a final decision and had not sought compensation in state court, all because *Knick* held that "the property owner has suffered a violation of his Fifth Amendment rights when the government takes his property without just compensation, and therefore may bring his claim in federal court under § 1983").

at 292 ("Ripeness is a question of law that implicates this court's subject matter jurisdiction."); *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010) ("Ripeness is a component of subject matter jurisdiction, because a court has no power to decide disputes that are not yet justiciable.").

A Takings Clause claim is ripe for judicial review when there is a final decision in which the government takes the property without just compensation.  *See Knick*, 139 S.Ct. at 2168; *Urban Devs.*, 468 F.3d at 294.  As the United States District Court for the Southern District of Texas recently stated:

> In *Williamson County*, the Supreme Court established a two-prong test for evaluating ripeness under the Fifth Amendment's Takings Clause, explaining that such claims are not ripe until: (1) the relevant governmental unit has reached a final decision as to what will be done with the property; and (2) the property owner has sought compensation for the alleged taking through whatever adequate procedures the state provides. *See Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985). Two years ago, the Supreme Court overruled *Williamson County's* second prong, the state-exhaustion requirement. *See Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2167–68 (2019). Important here, the *Knick* court noted that it "does not question the validity of th[e] finality requirement." *Id.* at 2169. Thus, a federal regulatory taking claim is ripe for judicial review in federal court only if the challenged governmental conduct is a final decision. *See DM Arbor Ct. Ltd. v. City of Houston*, 988 F.3d 215, 218 n.2 (5th Cir. 2021) (recognizing that although *Knick* eliminated the state-exhaustion requirement, "it did not alter the requirement for a final decision from the regulator before any litigation is commenced"); *Wheelahan v. City of New Orleans*, No. CV 19-11720, 2020 WL 1503560, at *9 (E.D. La. Mar. 30, 2020) ("[A] Takings Clause claim is ripe for judicial review when the governmental unit has reached a final decision."). Governmental conduct is final if it demonstrates "a final, definitive position regarding how [the government] will apply the regulations at issue to the particular land in question." *Urban Devs.*, 468 F.3d at 293 (quoting *Williamson Cnty.*, 473 U.S. at 191).

"[T]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that

inflicts an actual, concrete injury." *Williamson Cnty.*, 473 U.S. at 193. The Fifth Circuit has declared that "whenever the property owner has ignored or abandoned some relevant form of review or relief, such that the takings decision cannot be said to be final, the takings claim should be dismissed as unripe." *Urban Devs.*, 468 F.3d at 293.

*Murphy v. City of Galveston*, 3:12-CV-00167, 2021 WL 1220104, at *4 (S.D. Tex. Mar. 31, 2021), *aff'd sub nom. Beach v. City of Galveston, Texas*, 21-40321, 2022 WL 996432 (5th Cir. Apr. 4, 2022) (finding Plaintiffs' claims were unripe for failing to establish the City arrived at a final position regarding their property status and dismissing for lack of subject matter jurisdiction).

In short, *Knick* eliminated the *Williamson County* "state-litigation requirement," which required a property owner to bring a claim for just compensation under state law in state court before bringing a federal takings claim in federal court. *Knick*, 139 S.Ct. at 2162. However, *Knick* does not overrule the requirement that a property owner must obtain a final decision before bringing a § 1983 takings claim in federal court. *Id.*; *see also Pakdel v. City and Cnty. of San Francisco, California*, 141 S.Ct. 226, 2228 (2021) ("When a plaintiff alleges a regulatory takings in violation of the Fifth Amendment, a federal court should not consider the claim before the government has reached a "final" decision.).[14]

---

[14] While *Knick* eliminates the exhaustion requirement for a property owner in state court, it did not convert state eminent domain actions brought by the government into federal claims. *See City of Jamaica Beach v. Williams*, 2020 WL 6120469, at *3 (S.D. Tex. Sep. 29, 2020) (citing *Providence City v. Thompson*, 2019 WL 4932759, at *4 (D. Utah Oct. 7, 2019) (stating *Knick* opens federal courts to takings claims that otherwise would have been brought as inverse condemnation suits in state court). Also, property owners are still entitled to bring a § 1983 claim for the taking in state court if they choose.

Plaintiffs bear the burden of establishing that an actual controversy exists or that their takings claim is "ripe" for judicial review. A takings claim consists of two elements: (1) the taking of private property for public use; (2) without just compensation. *Knick*, 139 S.Ct. 2167. While Plaintiffs allege the facts concerning their ownership in the property in dispute, there are no clear allegations that a "taking" has occurred or that their private property was finally determined for "public use."[15] There are also no allegations of a physical intrusion, taking possession, or any regulatory action.

Rather, the nature of Plaintiffs' allegations hinge on a determination of whether the road is public and, if public, that it would only have been through expropriation. ECF No. 11 at 8. Yet, "until a government makes up its mind, a court will be hard pressed to determine whether the plaintiff has suffered a constitutional violation." *Pakdel*, 141 S.Ct. at 2228; *see also Urban Devs.*, 468 F.3d at 294 (analyzing the finality requirement, finding that a threat to use the city's legal powers "does not constitute a taking, since a non-regulatory taking requires actual government confiscation or physical occupation").

"[A] 'future taking' – or a taking that has not happened yet – does not give rise to a claim under the Takings Clause." *Pharm. Research & Manufacturers of Am.*, 525 F.Supp.3d 946, 952 (D. Minn. Mar. 15, 2021) (citing *Knick*, 139 S.Ct. at 2171 ("[A] property owner has a constitutional claim for just compensation at the time of the

---

[15]. "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Jackson v. Standard Mortgage Corp.*, 2019 WL 6769361, at *4 (W.D. La. Dec. 11, 2019).

taking.") (internal quotations and citation omitted)).  Thus, the government need not compensate an individual for property it has not yet taken.  And here, there is no clear allegation that a taking has yet occurred or that a final definitive position has been made by the Police Jury.  Without a final decision, it is impossible to determine whether the governmental entity has actually taken the property, and the takings claim is not ripe.

Plaintiffs' takings claim is not ripe for review in federal court because there are no facts alleging a final decision by the Police Jury to "take" Plaintiffs' property.  *See Village Green at Sayville, LLC v. Town of Islip*, 2019 WL 4737054 (E.D.N.Y. 2019) ("Here, Plaintiff does not have a 'final, definitive position' from the municipal entity.  Rather, Plaintiff has a non-vote and an alleged statement by the Town attorney absent any citation to relevant binding precedent suggesting that this utterance, such as it may be, constitutes a final decision, or is otherwise binding on the Town Board.  This is insufficient to meet Plaintiff's burden, even at the motion to dismiss stage.");  *see also Hart v. Town of Guilderland*, 2020 WL 4500699 (N.D.N.Y. 2020) ("Therefore, the Court finds that Plaintiffs' due process claim is subject to the Williamson finality requirement.  Here, it is undisputed that there has not been a final determination by the government entity, thus, Plaintiffs' due process claim is not ripe.").

There are also no facts specifically alleging that the property has been, in fact, "taken."[16]  Plaintiffs fail to set forth adequate factual allegations to support its

---

[16] In fact, Plaintiffs' allegations submit that the Police Jury's written determination confirms that the public portion of the Road ended before it reached the Relentless Tract owned by Plaintiffs.  ECF No. 1 at 3.  Instead, Plaintiffs claim that a lone police juror took a position

conclusory assertions that, "if the Road is public, it was only made public by the [Police Jury] exercising its power of eminent domain." ECF No. 1 at 6. Plaintiffs' allegations do not compel the conclusion that the Police Jury already has taken or has made the final determination concerning the alleged "public" nature of the Road. The "finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury." *Williamson Cnty.*, 473 U.S. at 193. Thus, Plaintiffs' takings claim is not ripe and must be dismissed. *See Urban Devs.*, 468 F.3d at 295 ("A court should dismiss a case for lack of ripeness "when the case is abstract or hypothetical.").

In addition to their § 1983 takings claim, Plaintiffs seek a declaratory judgment. But declaratory judgment actions are held to the same ripeness standard. The Declaratory Judgment Act states:

> In a case of *actual controversy* within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. 2201(a). In other words, "[a] declaratory judgment action is ripe for adjudication only where an 'actual controversy' exists." *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000). Stated another way, a district court is without the power to grant declaratory relief if no actual controversy exists. *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 272 (1941).

---

contrary to that written determination. *Id.* at 5-6. Yet, no allegations indicate any formal or final position by the Police Jury other than the written determination.

Plaintiffs still bear the burden of establishing jurisdiction. The Declaratory Judgment Act "does not of itself confer jurisdiction on the federal courts." *Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*, 29 F.4th 226, 232 (5th Cir. 2022) (quoting *Jolly v. United States*, 488 F.2d 35, 36 (5th Cir. 1974)). Rather, for a court to have subject matter jurisdiction, the civil action – whether declaratory or other – must present either a federal question or involve diversity of citizenship jurisdiction. 28 U.S.C. §§ 1331, 1332.

For the reasons already discussed, Plaintiffs have not asserted a ripe claim under federal law.[17] Thus, this Court lacks subject matter jurisdiction.

### C.   State Law Claims

When, as recommended here, all claims which conferred federal subject matter jurisdiction are dismissed, the court may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c); *see Priester v. Lowndes County*, 354 F.3d 414, 425 (5th Cir. 2004) (citation omitted). As a general rule, state claims should be dismissed when the federal claims to which they are pendent are dismissed. *Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d 580, 585

---

[17] Notably, *Knick* held that injunctive relief was foreclosed for a governmental takings claim where remedies for just compensation exist. *Knick*, 139 S.Ct. at 2175-77 (explaining that equitable relief is unavailable where just compensation exists). Federal courts have routinely found that takings claims seeking declaratory relief are barred under *Knick*. *See Pharm. Research & Manufacturers of Am.*, 525 F.Supp.3d 946, 953 (D. Minn. Mar. 15, 2021) (citing cases); *see also Baptiste v. Kennealy*, 490 F.Supp.3d 353, 391 (D. Mass. 2020) (holding the declaratory relief for a takings claim, without just compensation, is the "functional equivalent of an unwarranted injunction" and is foreclosed under *Knick*).

Here, Plaintiffs' request for declaratory relief is tantamount to an injunction which is foreclosed under *Knick*. *See* ECF No. 1 at 13 (seeking a declaration that the Road is private and that the Police Jury is "estopped from claiming otherwise").

(5th Cir. 1992). In this case, no deviation from that rule is warranted. Accordingly, Plaintiffs' state claims should be dismissed without prejudice.

### III. Conclusion

Because Plaintiffs do not allege a ripe takings claim;

IT IS RECOMMENDED that the Police Jury's Rule 12(b)(1) Motion to Dismiss (ECF No. 9) be GRANTED for lack of subject matter jurisdiction, and that Plaintiffs' action be DISMISSED WITHOUT PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in Alexandria, Louisiana, on this  16th  day of June 2022.

JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE